Rob Bonta
Attorney General of California
Daniel Rogers
Supervising Deputy Attorney General
Vincent LaPietra
Deputy Attorney General
Lise S. Jacobson
Deputy Attorney General
State Bar No. 183862
 600 West Broadway, Suite 1800
 San Diego, CA 92101
 P.O. Box 85266
 San Diego, CA 92186-5266
 Telephone:  (619) 738-9019
 Fax:  (619) 645-2044
 E-mail:  Lise.Jacobson@doj.ca.gov
*Attorneys for Respondent*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARK OWEN LAUN,** | EDCV 18-02226 JVS (KES) |
| Petitioner, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS** |
| **v.** | |
| **ORANGE COUNTY SHERIFF,** | Judge:  The Honorable Karen E. Scott |
| Respondent. | |

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................... 5

Procedural history ................................................................................. 5

    I.     The Petition is moot because there is no meaningful relief that this court can provide .............................................................. 9

    II.    Laun's burden ...................................................................... 10

    III.   Laun's actual innocence claim is not cognizable on Federal Habeas Corpus; Even if it were, the California Court of Appeal reasonably rejected this claim .............................................. 10

    IV.   The California Court of Appeal reasonably rejected Laun's prosecutorial misconduct claims ........................................... 13

    V.    The California Court of Appeal reasonably rejected Laun's ineffective assistance of counsel claims ................................. 17

        A.    The alleged evidence of Doe's motive to lie ............... 18

        B.    The absent fingerprint evidence ................................. 20

        C.    The visual aids ........................................................... 20

        D.    Defense counsel's closing argument ........................... 21

    VI.   The California Court of Appeal reasonably rejected Laun's jury misconduct claims ......................................................... 21

Conclusion .......................................................................................... 24

Certificate of compliance .................................................................... 25

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Burt v. Titlow*
571 U.S. 12 (2013) ........................................... 17

*Carafas v. LaVallee*
391 U.S. 234 (1968) .......................................... 9

*Carriger v. Stewart*
132 F.3d 463 (9th Cir. 1997) ............................ 11

*Crawford v. Lungren*
96 F.3d 380 (9th Cir. 1996) .............................. 9

*Darden v. Wainwright*
477 U.S. 168 (1986) .......................................... 13

*Demirdjian v. Gipson*
832 F.3d 1060 (9th Cir. 2016) .......................... 16

*District Attorney's Office for the Third Judicial District v. Osborne*
557 U.S. 52 (2009) ............................................ 11

*Frazier v. Cupp*
394 U.S. 731 (1969) .......................................... 14

*Funes* v. *Uribe*
2013 WL 1091090 (C.D. Cal. Mar. 13, 2013) ...... 13

*Gentry v. Sinclair*
705 F.3d 884 (9th Cir. 2013) ............................ 17

*Gerlaugh v. Stewart*
129 F.3d 1027 (9th Cir. 1997) .......................... 19

*Harrington v. Richter*
562 U.S. 86 (2011) .................................. 10, 17, 21

*Herrera v. Collins*
506 U.S. 390 (1993) .......................................... 10

ii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*House v. Bell*
547 U.S. 518 (2006) ............................................................... 13

*In re Weber*
11 Cal. 3d 703 (1974) ............................................................ 12

*Irvin v. Dowd*
366 U.S. 717 (1961) ............................................................... 22

*Jones v. Taylor*
763 F.3d 1242 (9th Cir. 2014) ............................................... 12

*Knowles v. Mirzayance*
556 U.S. 111 (2009) ............................................................... 17

*Lockyer v. Andrade*
538 U.S. 63 (2003) ................................................................. 10

*McQuiggin v. Perkins*
569 U.S. 383 (2013) ............................................................... 11

*Rhines v. Weber*
544 U.S. 269 (2005) ................................................................. 8

*Rupe v. Wood*
93 F.3d 1434 (9th Cir. 1996) ........................................... 18, 19

*Soward v. Hedgpeth*
2015 WL 1926502 (C.D. Cal. Mar. 17, 2015) ...................... 16

*Spencer v. Kemna*
523 U.S. 1 (1988) ..................................................................... 9

*Strickland v. Washington*
466 U.S. 668 (1984) ..................................................... 17, 19, 21

*Tanner v. United States*
483 U.S. 107 (1987) ............................................................... 22

*Taylor v. Beard*
811 F.3d 326 (9th Cir. 2016) ................................................. 11

# TABLE OF AUTHORITIES
### (continued)

**Page**

*United States v. Barrett*
  703 F.2d 1076 (9th Cir. 1983)................................................................22

*United States v. Olano*
  62 F.3d 1180 (9th Cir. 1995)................................................................22

*Weeks v. Angelone*
  528 U.S. 225 (2000) ..........................................................................15

*Womack v. Del Papa*
  497 F.3d 998 (9th Cir.2007)................................................................17

*Yarborough v. Gentry*
  540 U.S. 1 (2003) ..............................................................................21

**STATUTES**

28 United States Code
  § 2254(a)..........................................................................................10
  § 2254(d)..............................................................................10, 21, 23
  § 2254(d)(1)......................................................................................17
  § 2254(e)(1) .......................................................................................5

California Evidence Code
  § 210 ..........................................................................................18, 19
  § 1200 ........................................................................................12, 19

California Penal Code
  § 17(b)................................................................................................9
  § 1203.4..............................................................................................9
  § 29805 (a)(1) ....................................................................................9

**CONSTITUTIONAL PROVISIONS**

United States Constitution
  Sixth Amendment ..............................................................................18

**OTHER AUTHORITIES**

Violence Against Women Act (VAWA)............................................18, 20

**INTRODUCTION**

Petitioner Mark Laun constantly pressured his new wife from China, Jane Doe, to have sex with him, and threatened and forced her when she resisted. After a few months, Doe told Laun she wanted a divorce. Laun, who had been drinking, grabbed a glass beer bottle and broke it, and used the sharp, jagged glass to stab Doe twice in the shoulder. After a jury convicted Laun of felony domestic battery causing injury with an enhancement for using a deadly weapon and assault with a deadly weapon, the court placed Laun on probation for three years. Laun appealed, filed his Petition in this Court, and obtained a stay of the federal proceedings. During this timeframe, Laun completed his probation and successfully moved to have his felony convictions reduced to misdemeanors and dismissed.

Laun raises four claims in the present Petition: (1) actual innocence; (2) prosecutorial misconduct; (3) ineffective assistance of trial counsel; and (4) juror misconduct. The Petition should be dismissed because it is moot. Alternatively, this Court should deny the Petition because the actual innocence claim is not cognizable on federal habeas review and the California Court of Appeal reasonably rejected all of Laun's claims on state habeas corpus.

**PROCEDURAL HISTORY**

The California Court of Appeal's summary of facts, which is presumed to be correct, 28 U.S.C. § 2254(e)(1), follows:

> Laun lived in a commercial building in Irvine where he worked. In February 2015, Laun and Jane Doe, who lived in China, met online. A few months later, Laun visited Doe in China. Six months later, Doe moved in with Laun and they got married days later. Doe, who could not speak English, enrolled in English classes.
>
> Within a month, neither party was happy, and sexual intercourse was a frequent topic of disagreement. In February 2016, Laun sent Doe e-mails pressuring her to have sexual intercourse with him and in one e-

mail stated that if the immigration department discovered she did not want "to sleep with [him]" it would charge her with fraud.

Four months later, there was an incident that led to Doe being transported to the hospital and receiving stitches on her right arm. Because the parties disagree about the events, we will provide their different versions of the events through their testimony.

An information charged Laun with domestic battery with corporal injury ([Cal.] Pen. Code, § 273.5, subd. (a), all further statutory references are to the Penal Code) (count 1), and aggravated assault (§ 245, subd. (a)(1)) (count 2). As to count 1, the information alleged he personally used a deadly weapon. (§ 12022, subd. (b)(1).) With respect to counts 1 and 2, the information alleged he inflicted great bodily injury (GBI). (§ 12022.7, subd. (e).)

At the time of trial, Doe was living in China and the prosecution was unable to compel her appearance. Her preliminary hearing testimony was read to the jury. Doe testified that before she moved to the United States, she told Laun that she had a medical condition that sometimes made sexual intercourse painful. After she married Laun, when she did not want to have sex, he would become angry, and they would argue. Laun told her that Jesus Christ said to obey her husband and she was not a good wife. Doe testified that "at the beginning when [she] refused it, he still forced it."

After having sexual intercourse with him one day in June 2016, she decided to return to China. Doe testified that the next morning, she took her passport from Laun's drawer and gave it to a friend. Later that day, she asked him for a divorce. After he got her luggage, he began drinking alcohol and said he would give her another chance. Doe took a shower and went to the bedroom. Laun continued drinking in the kitchen and

later went into the bedroom to talk to Doe. She told him that she did not want to talk anymore and wanted to go to sleep. Laun was upset and lost his temper. Doe testified Laun grabbed a beer bottle from the desk, smashed it against another beer bottle, and stabbed Doe twice in the right shoulder. Doe ran outside and called 911.

When police arrived, Doe was standing outside with blood dripping down her arm. Officers, including Officer Jayson Vespia, searched the building. On the second floor, they found Laun standing in the doorway of his room sweeping with a broom—there was glass and blood on the ground. Vespia asked Laun where the blood came from. He replied it was possibly from Doe walking through the glass with bare feet. Vespia found the broken beer bottle in a trash can next to Laun's desk. Doe was transported to the hospital where she received stitches.

Laun testified that soon after the marriage he became concerned about Doe's commitment to him for a variety of reasons, including intimacy issues. Laun became suspicious Doe married him to obtain entry to the United States. The day before the incident, Laun sent Doe an e-mail stating he wanted to end the marriage and he would buy her a plane ticket and give her $1,000. In her e-mail response, Doe provided a timeline of their relationship, which caused Laun to believe she was preparing to accuse him of domestic violence.

Laun stated that on the evening of the incident, he drank two alcoholic beverages, took two sleeping pills, and fell asleep in his chair. When he woke up, he saw glass and blood on the floor. He suspected Doe was trying to frame him for injuring her so she could remain in the United States. Additionally, Laun offered testimony from a detective who stated Doe told her that Laun attacked her on the bed. Laun also offered testimony as to his good character and peaceful nature. During closing

1   argument, Laun's defense counsel argued Doe stabbed herself and framed

2   Laun so she could remain in the country.

3   (Doc. 19 at 145-47.)

4   On November 21, 2017, the jury found Laun guilty of domestic battery with

5   corporal injury, with a deadly weapon use enhancement, and assault with a deadly

6   weapon.  The jury also found the GBI enhancement alleged in both counts not true.

7   (Lod. 8 (2 CT 270-71).)  On January 19, 2018, the trial sentenced Laun to prison for

8   five years, suspended execution of the sentence, and placed him on probation for

9   three years.  (Lod. 8 (1 CT 46).)

10   Laun appealed, challenging the jury instruction on assault with a deadly

11   weapon and defense counsel's failure to object to the challenged instruction.  (Lods.

12   1, 3; Doc. 19 at 134-41.)

13   On December 14, 2018, while his direct appeal was still pending, Laun filed a

14   habeas petition in the California Court of Appeal, claiming: (1) new evidence

15   shows he is actually innocent; (2) prosecutorial misconduct; (3) ineffective

16   assistance of trial counsel; and (4) jury misconduct.  (Lod. 5.)  That same day, Laun

17   filed a Petition in this Court containing the same claims. (Docs. 1 & 2.) On May 2,

18   2019, this Court granted Laun's motion to stay his Petition pursuant to *Rhines v.*

19   *Weber,* 544 U.S. 269 (2005).  (Doc. 13.)

20   Five and a half months later, on October 18, 2019, the California Court of

21   Appeal affirmed the judgment on direct appeal.  (Doc. 19 at 144-52.)  The

22   California Supreme Court granted review but deferred further action pending the

23   resolution of another case with a related issue.  On November 16, 2022, the

24   California Supreme Court dismissed the petition for review.  (Doc. 33 at 3.)

25   During the pendency of Laun's direct appeal, Respondent filed an informal

26   response to his state habeas petition.  (Lod. 6.)  After Laun filed a reply (Lod. 11),

27   the California Court of Appeal summarily denied the petition (Doc. 14 at 10), and

28

the California Supreme Court denied Laun's petition for review of the denial order (Doc. 14 at 4-9; Doc. 15 at 3).

Laun also filed a motion in the state superior court to have his convictions reduced to misdemeanors pursuant to California Penal Code § 17(b) and dismissed pursuant to California Penal Code § 1203.4.  On April 18, 2021, the superior court granted the motion, reducing the felony convictions to misdemeanors and dismissing "all felony convictions" and "all misdemeanor convictions" against Laun.  (Doc. 32-1.)

On December 1, 2022, this Court lifted the stay and ordered Respondent to file a response.  (Doc. 33.)

## I.   THE PETITION IS MOOT BECAUSE THERE IS NO MEANINGFUL RELIEF THAT THIS COURT CAN PROVIDE

An unconditional release from prison can render a federal habeas petition moot.  *See Spencer v. Kemna*, 523 U.S. 1, 7 (1988).  To avoid mootness, a released petitioner must show "some concrete and continuing injury other than the now-ended incarceration," i.e., "a collateral consequence of the conviction." *Id.* Examples of collateral consequences sufficient to satisfy the Constitution's case-or-controversy requirement include the inability to hold political office, vote, or serve as a juror. *See, e.g., Carafas v. LaVallee*, 391 U.S. 234, 237 (1968).  If, however, a court cannot provide any type of effective relief, a petition may be moot. *See Crawford v. Lungren,* 96 F.3d 380, 389 (9th Cir. 1996).

As discussed, Laun completed probation and successfully moved to have his convictions reduced to misdemeanors and dismissed pursuant to California Penal Code §§ 17(b) and 1203.4.  Laun is correct that there are still collateral consequences to his now-dismissed misdemeanor convictions, including that he cannot possess a firearm for ten years from the date of his conviction. *See* Cal. Penal Code § 29805 (a)(1).  But there is no meaningful relief that this Court can provide to Laun.  As discussed below, Laun's actual innocence claim is not

9

cognizable on federal habeas review, and the typical grant of relief for his remaining claims—prosecutorial misconduct, ineffective assistance counsel, and juror misconduct— is a conditional order that an inmate must be retried or released. Laun has already completed his probation and his convictions dismissed.  Because relief on the cognizable claims would not nullify Laun's convictions, the Petition should be dismissed as moot.

## II.    LAUN'S BURDEN

A state prisoner may obtain federal habeas relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Relief may not be granted on any constitutional claim adjudicated on its merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

As noted, Laun raised the claims in the present Petition on state habeas, and the California Court of Appeal summarily denied relief.  A summary denial is presumed to have been on the merits. *Harrington v. Richter*, 562 U.S. 86, 99 (2011).  Consequently, Laun must establish the lack of reasonable basis for the court of appeal's denial of relief. *Id.* at 98.  Laun has not done so.

## III.   LAUN'S ACTUAL INNOCENCE CLAIM IS NOT COGNIZABLE ON FEDERAL HABEAS CORPUS; EVEN IF IT WERE, THE CALIFORNIA COURT OF APPEAL REASONABLY REJECTED THIS CLAIM

Laun contends his actual innocence is established by two pieces of new evidence: (1) a witness who would testify that Doe admitted that she stabbed herself and framed him, and (2) an unnamed expert witness who would testify that Doe's wounds were self-inflicted. (Doc. 2 at 5-7.)  A freestanding claim of actual innocence is not cognizable on federal habeas corpus. *See Herrera v. Collins*, 506

U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *see also McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52, 71 (2009) ("Whether such a federal right [to be released upon proof of actual innocence] exists is an open question."); *see also Taylor v. Beard*, 811 F.3d 326, 334 (9th Cir. 2016) (en banc) (it is "still an open question as to whether a petitioner 'may be entitled to habeas relief based on a freestanding claim of actual innocence'").

Even if it were, Laun's claim fails on the merits. The Ninth Circuit has held "the threshold for a freestanding claim of innocence would have to be extraordinarily high": a petitioner would have to "go beyond demonstrating doubt about his guilt, and [] affirmatively prove that he is probably innocent." *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (en banc) (internal quotation marks omitted). Laun has not satisfied this extraordinarily high threshold.

With respect to the alleged perjury confession, Laun has not provided a declaration from the witness, Siqing Johnson, whom he claims heard Doe say that she stabbed herself and framed Laun. Instead, Laun has attached a declaration by Siqing's husband, Michael[1] declaring: "In August of 2017, my wife Siqing [] told me that [Doe] had confessed to inflicting her own injury and blaming [Laun] for the purpose of gaining permanent residency." (Doc. 2 at 30.) The declaration also states that Michael and Siqing offered to testify as witnesses on Laun's behalf but does not state when they made this offer. (*Id.*)

---

[1] Respondent refers to Michael and Siqing Johnson by their first names to avoid confusion.

1    Laun claims that Siqing is "no longer a willing witness" because testifying

2    could "endanger her own immigration status" and result in "deportation." (Doc. 2 at

3    5-6; *see also* Doc. 2 at 30.)  But Laun offers no explanation as to why testifying

4    truthfully about his matter might endanger her immigration status. Nor does he

5    explain why Siqing would not be willing to submit a sworn declaration.

6    Furthermore, Laun has not established that this evidence was new. According

7    to Michael's declaration, Siqing told him that Doe had recanted in August of 2017.

8    (Doc. 2 at 30.) "After this, [he] contacted Mr. Laun to tell him," and offered to

9    testify. (*Id*.) Laun's jury trial did not commence until mid-November 2017. (1 RT

10   1.)  Laun, however, claims in his Petition that Michael did not inform him about

11   Siqing's statement until almost one year later, in May of 2018. (Doc. 2 at 5.)  Laun

12   has not addressed this apparent discrepancy.

13   Even if Michael's declaration constituted newly discovered reliable evidence,

14   it does not affirmatively show that Laun is probably innocent.  Testimony from

15   Michael about a statement the victim made to his wife is inadmissible hearsay

16   without exception.  Cal. Evid. Code § 1200.  And the accuracy of Michael's claim

17   is highly suspect.  Siqing is unwilling to testify to what she supposedly heard. (Doc.

18   at 5-6.)  And even if Siqing were willing to testify, she would not be a credible

19   witness.  She would have to admit that she believed Laun had been wrongly

20   convicted of a crime yet waited nearly a year to come forward with evidence that

21   might assist in his defense. (Doc. 2 at 5-6.)  As the California Supreme Court has

22   noted, "the offer of a witness after a trial to retract his sworn testimony is always

23   viewed with suspicion," and the testimony of someone "who claimed to have heard

24   a retraction" is even more questionable.  *In re Weber*, 11 Cal. 3d 703, 724–25

25   (1974); *accord Jones v. Taylor,* 763 F.3d 1242, 1248 (9th Cir. 2014) (noting

26   "'[r]ecantation testimony is properly viewed with great suspicion,'" and finding

27   recantation testimony, uncorroborated by any other evidence, insufficient to

28   demonstrate probable innocence) (alteration in original) (citation omitted).

1    As for Laun's claim that he has found expert witnesses who can determine that
2    Doe's injuries were self-inflicted. (Doc. 2 at 6-7), Laun has failed to provide the
3    names or declarations or like evidence from any such experts. *Funes* v. *Uribe*,
4    2013 WL 1091090, at *3 (C.D. Cal. Mar. 13, 2013) (rejecting claim for lack of
5    such evidence). In fact, Laun admits that his trial counsel stated that he could not
6    find that kind of expert witness and did not think that one could not be found. (Doc.
7    2 at 7.) During the hearing on Laun's new trial motion, the trial court affirmed trial
8    counsel's assessment, noting it had over forty years of experience in criminal law
9    and had "never heard of an expert" who could identify if a stab wound from a
10   broken bottle was self-inflicted. (2 RT 563.) The documents that Laun obtained
11   from a forensic medicine website to not establish otherwise, i.e., that such experts
12   exist. (*See* Doc. 2 at 31-47.)

13   In short, neither Michael's declaration nor Laun's assertions about an expert
14   on self-inflicted wounds constitute "new reliable evidence" sufficient to support a
15   claim of actual innocence. *House v. Bell*, 547 U.S. 518, 537 (2006). Accordingly,
16   the state court of appeal reasonably rejected Laun's actual innocence claim.

17   **IV.  THE CALIFORNIA COURT OF APPEAL REASONABLY REJECTED LAUN'S**
18        **PROSECUTORIAL MISCONDUCT CLAIMS**

19   Laun contends the prosecutor committed misconduct during opening statement
20   and closing argument. (Doc. 2 at 10-11.) To obtain habeas relief on a prosecutorial
21   misconduct claim, a petitioner must do more than establish that the prosecutor's
22   remarks were improper or even universally condemned. *Darden v. Wainwright*,
23   477 U.S. 168, 180-81 (1986). A petitioner must instead show the remarks, when
24   viewed in the context of the entire trial, "so infected the trial with unfairness as to
25   make the resulting conviction a denial of due process." *Id.* at 186 (citation
26   omitted). The California Court of Appeal reasonably applied *Darden* in rejecting
27   Laun's prosecutorial misconduct claims.

28

During opening statement, the prosecutor stated:

So on June 29th of 2016, the defendant here, Mr. Laun, got upset at his wife that he met online from China because she wasn't giving him enough sex, basically is really the best way to put it.  And in the course of an argument on this particular night he broke a beer bottle and stabbed her in the arm with it, and that is what this case is all about.

(Lod. 8 (1 RT 1 (opening stmts.).)

Laun asserts this statement constituted misconduct because Doe testified at the preliminary hearing that the argument on June 29, 2016 did not have to do with sex and that Laun had not asked for sex that night.  Instead, the two argued about Doe having taken her passport that morning.  (Doc. 2 at 8-10; *see* Lod. 8 (3 CT 475-77).)

While improper remarks in opening statement can rise to the level of a constitutional violation, an objective summary of what the prosecutor reasonably expects to produce generally does not do so.  *Frazier v. Cupp,* 394 U.S. 731, 736 (1969).  "Many things might happen during the course of the trial which would prevent the presentation of all the evidence described in advance. Certainly not every variance between the advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been given."  *Id.* at 736.

Here, in addition to testifying that the fight on June 29 was over her passport, Doe testified that she had asked Laun for a divorce that day and refused to talk to him after her shower because he had been drinking.  (Lod. 8 (3 CT 577-78, 627, 634).)  She also testified that the two had argued frequently during their marriage about her not wanting to have sex with him. (Lod. 8 (3 CT 570, 575, 627).) Doe said that whenever she told Laun she did not want to have sex, he told her she should obey her husband, that is what Christ said to do, and that she was not a good

wife. (Lod. 8 (3 CT 575, 645).)  In the beginning, when she said no, he still "forced it." (Lod. 8 (3 CT 577).)

Consistent with this testimony, Laun admitted on cross-examination that he sent Doe multiple e-mails pressuring and threatening her to have sex with him. (Lod. 10 (2 RT 273, 275-78, 283-84, 286-91, 298-99).)  For example, he wrote that if the immigration department found out that she did not want to sleep with him, they would charge her with fraud and she could be punished legally. (Lod. 10 (2 RT 283).)  He told her that if she attempted "to fake the change or fail to convince," she would not be able to come back to the U.S. (Lod. 10 (2 RT 284).)  He told her that he liked "a lot of sex" and "it was the basis of [their] marriage contract." (Lod. 10 (2 RT 291).)

Thus, the prosecutor's statement that Laun was upset with Doe on June 29 "because she wasn't giving him enough sex" was not defamatory or even inaccurate; their disagreements about sex were the reason Doe took her passport and wanted a divorce.

Moreover, the trial court instructed the jury before opening statements that "[i]n their opening statements and closing arguments, the attorneys will discuss the case but their remarks are not evidence." (1 RT 44.)  The court gave a substantially similar instruction in its final charge.  (2 RT 404.)  The jury is presumed to have followed these instructions.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

Defense counsel also emphasized to the jury during closing argument that the argument on June 29 was not about sex as the couple was getting divorced.  (2 RT 371-72.)  And, as the trial court noted at the hearing on the new trial motion, the exact motive for the stabbing, i.e., sex, Doe leaving, or Doe's disrespect of Laun, was unimportant because motive is not an element of the charged offenses.  (2 RT 563-64; *see* 2 RT 413 (instruction).)  Thus, the state court could have reasonably determined that any variance between the prosecutor's summary of the evidence that he expected to produce and the evidence actually adduced at trial did not render

1   Laun's trial fundamentally unfair.  *See e.g., Soward v. Hedgpeth,* 2015 WL

2   1926502, at *18 (C.D. Cal. Mar. 17, 2015) (rejecting claim prosecutor committed

3   misconduct during opening statement).

4        Laun's attack on the prosecutor's rebuttal argument fares no better.  During

5   rebuttal, the prosecutor argued to the jury that Laun had testified "that he has

6   reviewed phone records and text messages.  You know what folks, he has no

7   burden of proof, but if he had some phone records or text messages that exonerated

8   him, don't you think for a second you'd see it and hear them?" (Lod. 10 (2 RT

9   393).)  The prosecutor also argued that Laun "testified he has reviewed phone

10  records and text messages that prove, what?  That she stabbed herself?  That she is

11  making this whole thing up?  That she is doing this intentionally to get him in

12  trouble?  Where are they?  Where are they?" (Lod. 10 (2 RT 394).)  After

13  reiterating that Laun did not "have to prove anything" and that it was "not his

14  burden of proof," the prosecutor asked, "But if he has got them, where are they? [¶]

15  Why didn't you see them?" (Lod. 10 (2 RT 394-95).)

16       Laun asserts the prosecutor's argument was despicable and reprehensible

17  because the prosecutor knew the text messages and phone records existed.  (Doc. 2

18  at 11.)  But Laun has not pointed to any text messages or phone records that

19  exonerate him or establish Doe's injuries were self-inflicted.  A prosecutor may

20  comment on a defendant's failure to produce exculpatory evidence.  *Demirdjian v.

21  Gipson*, 832 F.3d 1060, 1067 (9th Cir. 2016).  Because that is all the prosecutor did

22  here, the California Court of Appeal reasonably rejected his claim.

23       Finally, Laun asserts that his attorney told him that the prosecutor ordered a

24  detective not to have the fingerprints from the broken bottle examined and to stop

25  investigating his case.  (Doc. 2 at 11.)  But Laun has not supported this allegation

26  with a declaration or like evidence from his trial counsel, the investigating

27  detective, or the prosecutor.  Conclusory and self-serving statements do not warrant

28

1  habeas relief.  *Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir.2007).

2  Accordingly, the court of appeal reasonably rejected this claim.

3
4  **V.   THE CALIFORNIA COURT OF APPEAL REASONABLY REJECTED LAUN'S
       INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS**

5       Laun contends counsel was ineffective in failing to present evidence to

6  undermine Doe's credibility, present evidence of his actual innocence, use the

7  prepared visual aids during closing argument, and present an effective closing

8  argument. (Doc. 2 at 12-26.)  The court of appeal reasonably applied *Strickland v.*

9  *Washington*, 466 U.S. 668 (1984), in rejecting these claims as meritless.

10      To prevail on a claim of ineffective assistance, a habeas petitioner must

11  establish both deficient performance and resultant prejudice.  *Strickland*, 466 U.S.

12  at 687-88.  To demonstrate deficient performance, a petitioner bears the burden of

13  showing that his counsel's representation fell below an objective standard of

14  reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 697.

15  To establish prejudice, a petitioner "must show that there is a reasonable probability

16  that, but for counsel's unprofessional errors, the result of the proceedings would

17  have been different." *Id.* at 694.

18      Review of ineffective assistance claims under § 2254(d)(1) is "doubly

19  deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  "The question is

20  whether there is any reasonable argument that counsel satisfied *Strickland's*

21  deferential standard." *Richter*, 562 U.S. at 105.

22      Here, Laun has not provided a declaration from trial counsel explaining his

23  reasons for his actions or failure to act.  "The absence of evidence" is insufficient to

24  rebut the presumption of competence.  *Burt v. Titlow*, 571 U.S. 12, 23 (2013).  The

25  court of appeal could have reasonably rejected Laun's *Strickland* claims for this

26  reason alone.  *See Gentry v. Sinclair*, 705 F.3d 884, 899–900 (9th Cir. 2013)

27  (rejecting ineffective assistance of counsel claim based on counsel's failure to offer

28  evidence where petitioner failed to provide declaration or affidavit from counsel

addressing reasons for his actions).  The court of appeal could also have reasonably determined that Laun's individual complaints fall far short of establishing a Sixth Amendment violation.

### A.   The alleged evidence of Doe's motive to lie

Laun points to several types of additional evidence that he argues his counsel should have introduced to undermine Doe's credibility by showing she had a motive to lie, i.e., her immigration concerns. (Doc. 2 at 12-17.) But the additional evidence was either inadmissible, cumulative, or both.  For example, Laun argues that his attorney should have asked the trial court to take judicial notice that the victim "would have" been granted a green card as a victim of domestic violence under the Violence Against Women Act (VAWA). (Doc. 2 at 12.) But Laun can point to no part of the act that guarantees green cards to victims of domestic violence, and thus the trial court could not have taken judicial notice of any such thing. Furthermore, such evidence was not relevant.  *See* Cal. Evid. Code § 210. Counsel had no reason to believe that the victim had ever applied for residency under VAWA.  Indeed, Laun admits that he knows the victim did not stay in the United States and "believe[s] [her] to be in China." (Doc. 2 at 6.)  "[T]he failure to take a futile action can never be deficient performance."  *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996).

Laun argues counsel should have presented a text exchange in Chinese between Doe and a church friend the day before the stabbing.  Laun claims the friend advised Doe in the text that Doe could get a green card if she could prove that a "foreigner" had abused her. (Doc. 2 at 13-14.)  Defense counsel advised the court he was not calling the church friend as a witness because her testimony would have been largely cumulative with two other witnesses regarding any domestic violence between the couple and Laun's truthfulness.  (1 RT 235-36.)  "A reasonable tactical choice based on an adequate inquiry is immune from attack

under *Strickland*."  *Gerlaugh v. Stewart*, 129 F.3d 1027, 1033 (9th Cir. 1997). Additionally, assuming the accuracy of Laun's translation, questioning the church friend about the text could have backfired as the church friend may have provided damaging testimony about why she offered that advice to Doe.

Laun also asserts, without documentary support, that during a recorded interview with a detective, Doe tearfully said she did not want to return to China because she had no work there, the people at home knew she was married, and her family thought she was "living a very good life here."  (Doc. 2 at 14.)  Counsel could have reasonably determined that the presentation of evidence that Doe was ashamed that her marriage failed might have engendered sympathy for Doe.

Laun similarly argues, again without providing any evidentiary support, that counsel should have presented emails and documents from Doe indicating she had pursued two Norwegian men before him.  (Doc. 2 at 15.)  Such evidence would have been inadmissible because it is both hearsay and irrelevant.  *See* Cal. Evid. Code §§ 210, 1200.  Again, counsel is not ineffective in failing to engage in futile acts.  *Rupe v. Wood*, 93 F.3d at 1445.

Laun further argues that counsel should have presented evidence of Doe's phone records.  (Doc. 2 at 15-16.)  Defense counsel cross-examined Doe about the calls she made just before and after the attack.  (Lod. 8 (3 CT 449-50, 452-54).)  This testimony, as both defense counsel and the trial court observed (Lod. 8 (3 CT 451-52, 463)), had minimal probative value without evidence of the purpose of the calls.  Because the phone records did not fill this evidentiary gap, the California Court of Appeal could have reasonably determined that counsel was not deficient in failing to introduce the phone records since they would have been cumulative and minimally probative.

The court of appeal could have also reasonably determined that Laun failed to establish prejudice from counsel's failure to introduce any of the alleged impeachment evidence.  Even assuming Doe received information about the

possibility that she could petition for residency under VAWA, such evidence would have only been cumulative to evidence counsel had already presented:  Doe's inconsistent statements, the fact that she did not testify at trial, and Laun's testimony that Doe was motivated solely by her desire to stay in the country. (Lod. 10 (1 RT 180; 2 RT 319, 382-83, 384-87, 366-68).)  Furthermore, it would have allowed the prosecutor to call rebuttal witnesses to testify that Doe had never applied for residency under VAWA, which would have been a blow to Laun's credibility. (Doc. 2 at 6.)  Nor can Laun show how additional evidence about VAWA would have influenced the jury's determination that Laun's unbelievable story—that Doe stabbed herself and framed him—was not credible.

**B.    The absent fingerprint evidence**

Laun claims that his counsel was ineffective because he failed to show evidence of his "actual innocence." (Doc. 2 at 18.)  Laun argues that this evidence consists of the Doe's fingerprints on the weapon "in a wielding position." (Doc. 2 at 18.)  But, as Laun acknowledges, his assertion is based totally on his own speculation. (See Doc. 1 at 18 (stating that fingerprints might not "still exist" on the weapon).)  And, in any case, Laun cannot show prejudice. As the trial court noted, fingerprint evidence on the glass bottle used to stab Doe would not "be very decisive in [this] case," as both Laun and Doe had access to the bottles. (Lod. 10 (2 RT 563.)

**C.    The visual aids**

Laun claims that his attorney "forgot" to use some visual aids during his closing argument. (Doc. 2 at 19.)  According to Laun, the visual aids consisted of enlarged poster board prints of crime scene photographs and diagrams. (Doc. 2 at 19.)  Even assuming his unsupported allegation is true, Laun cannot show prejudice.  All of the exhibits were sent into the jury room to assist the jury in their deliberations. (2 RT 421.)  As to the diagrams, Laun argues that they were important because they show that the blood evidence was inconsistent with the

victim's testimony. (Doc. 2 at 21-23, 51-52.)  But, as the trial court noted, Laun's opinion that the diagrams demonstrate that the blood evidence was inconsistent with Doe's testimony was "total[] speculation." (2 RT 564.)  A failure to present argument based wholly on the accused's unsupported speculation does not amount to gross incompetence.

### D.   Defense counsel's closing argument

Finally, Laun takes issue with how counsel conducted his closing argument. In Laun's opinion, his counsel presented "only irrelevant and inconclusive arguments." (Doc. 2 at 26.)  To the contrary, the record shows that counsel zealously argued the jury should not believe Doe based on the evidence in the case. (Lod. 10 (2 RT 319, 382-83, 384-87, 366-68).) As the trial court observed, counsel "worked hard for [petitioner]" and his advocacy "was good." (Lod. 10 (2 RT 564).) Laun even agreed with the trial court, saying that counsel "fought very well for me." (Lod. 10 (2 RT 566).)  Indeed, although the jury found Laun guilty of the charges and found a deadly weapon use enhancement to be true, the jury found the GBI allegations not true.  (Lod. 8 (2 CT 270-72).)  Given these circumstances and that "deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage," *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003), the court of appeal reasonably rejected Laun's claim.

In short, because the court of appeal reasonably applied *Strickland* in rejecting Laun's claims, § 2254(d) bars relitigation.  *Richter*, 562 U.S. at 105.

## VI.   THE CALIFORNIA COURT OF APPEAL REASONABLY REJECTED LAUN'S JURY MISCONDUCT CLAIMS

Laun claims his due process right to "a fair expression of opinion on the part of all the jurors was violated" because one of the jurors fell asleep during trial and the jury's guilty verdict was a result of "peer pressure." (Doc. 2 at 27-28.)  The state courts reasonably rejected these claims.

1    Laun raised these same jury misconduct allegations in his pro per new trial

2 motion.  (Lod. 8 (2 CT 277-96, 300-01); Lod. 10 (2 RT 548-59).)  At the hearing on

3 the motion, Laun argued, "[m]any of the other jury members were nudging each

4 other, pointing at this jury member, nudging him.  I believe the Court addressed the

5 jury member at one point.  But for the rest of the trial, he was half nodding off and

6 head down, eyes closed." (Lod. 10 (2 RT 548-49).)  The trial court responded, "I

7 disagree with that.  Once I warn a juror, I watch them."  (Lod. 10 (2 RT 549).)

8    The trial court also disagreed with Laun's argument that, because the jury

9 reached a verdict after being deadlocked, their decision "was based on peer

10 pressure." (2 RT 549.) The trial court noted, "We thought the jury was deadlocking,

11 and then they said wait," and they came to a decision. (2 RT 565.)

12    "[T]he right to jury trial guarantees to the criminally accused a fair trial by a

13 panel of impartial, 'indifferent' jurors."  *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).

14 The presence of a sleeping juror during trial does not, *per se*, deprive a defendant of

15 this right.  *Tanner v. United States*, 483 U.S. 107, 114-15, 126-27 (1987); *see*

16 *United States v. Olano*, 62 F.3d 1180, 1189 (9th Cir. 1995) ("[T]he presence of all

17 awake jurors throughout an entire trial is not an absolute prerequisite to a criminal

18 trial's ability to reliably serve its function as a vehicle for determination of guilt or

19 innocence.").  Here, the court of appeal reasonably determined there was no

20 constitutional violation, because the trial court warned the juror about sleeping and

21 then watched to make sure the juror did not fall asleep.  *See United States v.*

22 *Barrett*, 703 F.2d 1076, 1083 n.13 (9th Cir. 1983) (sleeping juror claim properly

23 rejected once trial court determined juror "did not miss essential portions of the trial

24 and was able to fairly consider the evidence").

25    With respect to the peer pressure claim, the record supports the trial court's

26 determination that the verdict was not the result of peer pressure.  The jury began

27 deliberating at 3:44 p.m. on November 20, 2017.  (Lod. 8 (1 CT 38).)  At 2:49 p.m.

28 the next day, the jury sent the court a note indicating they had "actively and

passionately shared [their] opinions for many hours, had reviewed the evidence and instructions, voted seven times, yet still had not reached a unanimous consensus." (Lod. 8 (1 CT 40; 2 CT 265).)   The jury asked, "May we please ask for judicial instruction?"  (Lod. 8 (2 CT 265).)

At 3:14 p.m., the court and the parties discussed the note and agreed to have the court ask the jurors if there was anything they could do to assist them in reaching a verdict.  (Lod. 10 (2 RT 427-28); Lod. 8 (1 CT 40).)  The court then asked the bailiff to bring the jurors to the courtroom.  The bailiff advised the court "the jurors were asking for five minutes to discuss one last issue, I guess."  (Lod. 10 (2 RT 428); Lod. 8 (1 CT 40).)  At 3:25, the jurors advised the bailiff they wanted an additional thirty minutes.  (Lod. 8 (1 CT 41); Lod. 10 (2 RT 429).)  At 3:55, the jurors asked that they be allowed to deliberate until 4:30.  (Lod. 8 (1 CT 41).)  At 4:29, the court informed the parties that the jury had reached a verdict.  (Lod. 8 (1 CT 41); Lod. 10 (2 RT 429-30).)  At 4:32, the jury returned to the court room and the clerk announced the verdict.  (Lod. 8 (1 CT 41; 2 CT 270-71); Lod. 10 (2 RT 430-33).)  The jurors were individually polled and each juror indicated they agreed with the verdict.  (Lod. 10 (4 RT 431-33).)  Thus, the record does not establish that the jury's verdict was the product of improper peer pressure.  Accordingly, there was no constitutional violation.

As for Laun's fleeting claim that counsel was ineffective in failing to have the jurors individually polled about their pre-verdict positions (Doc. 2 at 28), the state courts could have reasonably rejected this claim because Laun has not cited any authority that indicates any such request would have been granted.  Nor has he established any prejudice.  Section 2254 (d) therefore bars relitigation of this claim.

1

**CONCLUSION**

2

For the reasons set forth above, the Petition should be dismissed as moot.

3

Alternatively, the Petition should be denied on the merits.

4

5

Dated:  December 29, 2022

Respectfully submitted,

6

ROB BONTA
Attorney General of California

7

DANIEL ROGERS
Supervising Deputy Attorney General

8

VINCENT LAPIETRA
Deputy Attorney General

9

*/s/ Lise S. Jacobson*

10

LISE S. JACOBSON
Deputy Attorney General
*Attorneys for Respondent*

11

12

LSJ: wh
SD2019800155
83742732.docx

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for The People of the State of California, certifies that this brief contains 6,382 words, which:

  x   complies with the word limit of L.R. 11-6.1.

Dated:  December 29, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California

/s/ Lise S. Jacobson

LISE S. JACOBSON
Deputy Attorney General
*Attorneys for Respondent*