ROB BONTA
Attorney General of California
DANIEL ROGERS
Supervising Deputy Attorney General
MATTHEW MULFORD
Deputy Attorney General
State Bar No. 184000
 600 West Broadway, Suite 1800
 San Diego, CA 92101
 P.O. Box 85266
 San Diego, CA 92186-5266
 Telephone:  (619) 738-9025
 Fax:  (619) 645-2044
 E-mail:  Matthew.Mulford@doj.ca.gov
*Attorneys for Respondent*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARK OWEN LAUN,**<br><br>              Petitioner,<br><br>      v.<br><br>**ORANGE COUNTY SHERIFF,**<br><br>              Respondent. | 8:18-cv-02226-JVS-KES<br><br>**SUPPLEMENTAL BRIEF REGARDING MOOTNESS**<br><br>Judge:   The Honorable Karen E. Scott<br>Action Filed: 12/14/2018 |

    This Court has asked a series of questions regarding whether Mark Laun's 2018 Petition under 28 U.S.C. § 2254 is moot. (Dkt. 37 at 4 of 4.) Respectfully, it is moot because the grant of petitioner Laun's April 2021 post-judgment motion in state court already provided him relief on the same judgment that he attacks with his 2018 Petition.

    According to the Supreme Court, a § 2254 petition "'seeks *invalidation* (in whole or in part) *of the judgment* authorizing the prisoner's confinement.'" *Magwood v. Patterson*, 561 U.S. 320, 332 (2010) (quoting with emphasis *Wilkinson v. Dotson*, 544 U.S. 74, 83 (2005)). Under *Magwood*, the "existence of a new

judgment" may be "dispositive." *Id*. at 338 (distinguishing *Burton v. Stewart*, 549 U.S. 147, 155–57 (2007)) (regarding 28 U.S.C § 2244(b)).

Here, Laun's 2018 Petition sought the invalidation of his 2018 California judgment for felony convictions and which authorized his confinement on probation. (*See* Dkt. 1 at 1 of 15, ¶2(b)). But as noted in this Court's February 2023 Order, Laun, in 2021 substantially invalidated that 2018 judgment by obtaining relief in state court under Cal. Penal Code §§ 17, 1203.4, and this included the end to his custody on probation and the reduction of his felony conviction to a misdemeanor. (Dkt. 37 at 2 of 4 (citing Dkt. 32 at 2); *also* Dkt. 32-1; Dkt. 32-2.) As explained by the Orange County Superior Court's order of November 11, 2022, this relief "released" Laun from many "'penalties and disabilities'" that resulted from his 2018 convictions. (Dkt. 32-2 (quoting *People v. Vasquez*, 25 Cal. 4th 1225, 1230 (2001) and citing *People v. Frawley*, 82 Cal. App. 4th 784, 791 (2000)).)

*Magwood* held that the existence of a "new state-court judgment" permitted a petitioner who had already sought federal habeas corpus relief under § 2254 to file another § 2254 petition. *Magwood*, 561 U.S. at 331–32, 338 & n.12 (regarding "an application challenging a new state-court judgment for the first time"). This circuit has applied *Magwood* to California rulings that make minor changes to a judgment that authorizes confinement. *See Gonzalez v. Sherman*, 873 F.3d 763, 765 (9th Cir. 2017) (regarding an "alteration of the number of presentence credits"). Laun's 2021 judgment is sufficiently new and distinct from the 2018 judgment that it would be controlling under *Magwood* and *Gonzalez* if, for example, Laun had previously received a federal judgment that challenged the 2018 Petition.

*Magwood*'s reasoning, however, may extend to show that Laun's 2018 Petition challenges a no-longer operative 2018 judgment, which, as Laun recognizes, lost legal force in 2021. (*See* Dkt. 32 at 2 of 4.) Just as a guilty plea is "a break in the chain of events which has preceded it," *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973), there is a similar break between Laun's 2018 judgment, as

2

challenged by Laun's 2018 Petition, and the 2021 judgment. Laun's agreement to misdemeanor treatment of his convictions under state law is inconsistent, at least arguably, with his assertion of innocence as raised in Ground One. (*See* Dkt. 37 at 4 of 4.) There is little reason to believe that anything Laun's trial counsel did before the 2018 judgment caused him prejudice under the 2021 judgment that Laun himself sought. *See Hill v. Lockhart*, 474 U.S. 52, 60 (1985). Laun's decision in 2021 to reduce his 2018 judgment in state court, accordingly, mooted his 2018 Petition and would render advisory any order that addressed the 2018 Petition's claims.

Indeed, the collateral consequences of a conviction are rarely if ever addressed directly by a habeas corpus petition, which permits a release from custody, but does not consider, for example, restitution or registration requirements. *See Munoz v. Smith*, 17 F.4th 1237, 1243-44 (9th Cir. 2021); *Bailey v. Hill*, 599 F.3d 976, 978–79 (9th Cir. 2010); *Henry v. Lungren*, 164 F.3d 1240, 1242 (9th Cir. 1999); *Williamson v. Gregoire*, 151 F.3d 1180, 1182 (9th Cir. 1998). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Harvest v. Castro*, 531 F.3d 737, 741 (9th Cir. 2008). Although counsel strives to comply promptly with federal orders, it is not always simple to convince a custodian—especially one like a probation officer who works for a county agency rather than the State—to release an inmate from custody. *Cf. People v. Superior Court*, 80 Cal. App. 4th 1305, 1317 (2000) (distinguishing federal authority and noting that the California's prison system "does not have the same type of relationship to state prosecutors as the U.S. Bureau of Prisons has to federal prosecutors"). Custody here, however, no longer exists under either the 2018 judgment or the 2021 judgment.

Laun's Petition does not allege that there has been an unconstitutional deprivation of his Second Amendment rights or any infringement on his ability to travel. (*But see* Dkt. 32 at 2.) Even if the Petition contained these types of claims,

3

no *record* keeper of a firearm database or court files is a party to this action such that it is not clear whether any type of, say, record correction or alteration or expungement could occur even if ordered—much less whether that would affect an affirmative grant of a license or a permit. International travel, of course, is outside the purview of state officials.

Although Laun might seek to amend his 2018 Petition to directly challenge his 2021 judgment or to raise additional issues, the State would likely oppose. For starters, Habeas Corpus Rule 2(e) requires separate petitions to challenge separate state-court judgments. Laun, moreover, has never been in custody regarding the 2021 judgment's misdemeanors. *See* 28 U.S.C. § 2254(a). Laun, similarly, has not exhausted any claim regarding his 2021 judgment, but this seems required under 28 U.S.C. § 2254(b). Further, and given the fact Laun has, under state law, been released from penalties and liabilities regarding his convictions—and he is not in custody under California law, either—it is doubtful that he could obtain any remedy regarding the 2021 judgment in state court. The lack of an available state-court remedy might in turn give rise to a procedural default for any federal challenge to the 2021 judgment. *See Gray v. Netherland*, 518 US 152, 161–62 (1996).

Any delay in Laun's ability to receive federal relief regarding the 2018 judgment, moreover, should not be attributed to the State, which opposed Laun's motion for a stay. (Dkt. 11.) Laun's appellate challenges to his convictions—which could have rendered his claims moot for a different reason—remained ongoing in state court for years. (*See* Dkt. 16 at 1–2 (citing *Sherwood v. Tomkins*, 716 F.2d 632, 634 (9th Cir. 1983); *also* Dkt. 18 at 3–4 (citing, e.g., *Edelbacher v. Calderon*, 160 F.3d 582 586–87 (9th Cir. 1998)).) In any event, mootness follows from Laun's own decision to obtain another state-court judgment and not the expiration of the stay.

In short, Laun's 2018 Petition is moot because Laun's new 2021 judgment means he is no longer in custody at all, especially as challenged regarding his 2018

4

judgment. In *Spencer v. Kemna*, the Supreme Court held that the end of custody regarding a challenge to a parole revocation rendered that challenge moot, and that it was not saved by the existence of any asserted collateral consequences. *Spencer v. Kemna*, 523 U.S. 1, 7–25 (1998). A similar result to *Spencer* should apply here due to Laun's application for, and receipt of, a new state court judgment in 2021.

Finally, and before addressing the Court's questions, Laun may have overlooked a 2018 amendment to California Penal Code § 29805 that increased the ten-year firearm prohibition for misdemeanants in general to a lifetime ban for "any person who is convicted, on or after January 1, 2019, of a misdemeanor violation of Section 273.5." Cal. Penal Code § 29805(b); *also* 2018 Cal. Legis. Serv. Ch. 883, § 1 (A.B. 3129); (also Dkt. 2 of 4 (citing, e.g., Cal. Penal Code § 29805(a)(1)).) Granted, Laun was charged and convicted of a felony under § 273(a) before this amendment occurred, but he was not convicted of a misdemeanor until April 2021, or after its effective date. *See Fortson v. Los Angeles City Attorney's Office*, 852 F.3d 1190, 1193–94 (9th Cir. 2017) (regarding notice under Cal. Pen. Code § 29810); *cf.* Cal. Pen. Code § 29860 (regarding a petition for relief).

As to the specific questions posed by the Court in its February 2023 Order (Dkt. 37 at 4 of 4):

1. Counsel is not aware of any decision that applies California's gun laws in a mootness context or to a Washington resident. But if a restriction under Cal. Penal Code § 29805 is sufficient to save Laun's 2018 Petition, it would likely continue to apply no matter the state where Laun resides because interstate travel and habeas corpus are privileges and immunities protected for citizens by the Fourteenth Amendment. *See Slaughter-House Cases*, 83 U.S. 36, 79–80 (1872).

2. Counsel is not aware of any decision that applies California's gun laws to a Washington resident and notes that they are the subject of substantial litigation following *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022). It does not appear that California law would permit the prosecution of

5

a prohibited person for firearm possession occurring entirely within another state, such as Washington, and outside of California. *See* Cal. Penal Code § 27.

However, Washington state law does prohibit firearm possession by persons convicted of a felony or "any of the following crimes when committed by one family or household member against another or by one intimate partner against another, as those terms are defined by the statutes in effect at the time of the commission of the crime, committed on or after July 1, 1993: Assault in the fourth degree, coercion, stalking, reckless endangerment, criminal trespass in the first degree, or violation of the provisions of a protection order or no-contact order restraining the person or excluding the person from a residence." RCW 9.41.040(2)(a)(i) (defining crime of second-degree unlawful possession of a firearm). The statute "give[s] out-of-state convictions the same effect as in-state convictions." *State v. Stevens*, 137 Wash.App. 460, 465 (2007). In determining whether an out-of-state conviction would qualify under the statute, a Washington court would "(1) identify the comparable Washington offense, (2) classify the comparable Washington offense, and (3) treat the out-of-state conviction as if it were a conviction for the comparable Washington offense." *Id*. The determination of a comparable Washington offense would require a Washington court to "compare the elements of the out-of-state crime with the elements of potential comparable Washington crimes, as defined on the date the out-of-state crime was committed." *Id*. As Laun's domestic violence conviction was reduced to a misdemeanor in California, the application of the Washington firearms prohibition would hinge on a Washington court's comparison of the elements of the offenses of "[a]ssault in the fourth degree, coercion, stalking, reckless endangerment, criminal trespass in the first degree, or violation of the provisions of a protection order or no-contact order restraining the person or excluding the person from a residence" with the elements of the California offense. *See id*. Only if there was complete identity of the Washington and California offenses would the prohibition apply. *See id*.

1 | However, California can only speculate as to whether a Washington court would
2 | find Laun's California offense to be comparable to a qualifying Washington crime.
3 |      Even assuming a Washington court would find the Washington prohibition to
4 | be applicable, there is a further question as to whether Laun's gun rights either have
5 | been, or could be, restored under Washington law. First, it is unclear whether
6 | dismissal under California Penal Code section 1203.4 would restore Laun's gun
7 | rights by operation law in Washington state. *See State v. Harrison*, 181 Wash.App.
8 | 577, 585-86 (2014) (finding certificate of rehabilitation issued by California court
9 | subject to California Penal Code §§ 4852.01-.19 would restore gun rights under
10 | RCW 9.41.040(3) even though insufficient to restore gun rights under California
11 | law). Second, it would appear Laun may be eligible to petition a Washington court
12 | for the restoration of his gun rights under Washington law. *See* RCW 9.41.040(4).
13 | Respondent is unaware of any action taken by Laun in the Washington state courts
14 | with respect to his gun rights.
15 |      3. Counsel is not aware of any limitation on the ability to obtain a passport
16 | that stems from Laun's convictions, especially now that the felony has been
17 | reduced to a misdemeanor. *See, e.g.*, 22 C.F.R. §§ 51.60–61 (2019).
18 |      4. The grant of a writ, conditional or otherwise, would technically be relief
19 | on a petition. But since Laun already completed his custody, no custodian can
20 | further release him, and since Laun's case was dismissed in 2021, no court may
21 | retry him. Yes, the prohibition on retrial here stems from the Los Angeles ruling
22 | that granted post-judgment relief in April 2021.
23 |      Counsel doubts that a federal writ would "vacate" a state judgment because
24 | state courts are typically bound only by the orders from one federal court: the
25 | Supreme Court. For this reason, and when writ relief has issued in the past, counsel
26 | has often sought to obtain a corresponding or complementary order, typically on
27 | state habeas corpus, from a state court that might, for example, vacate a judgment
28 | under state law and which will be more familiar to other state officials. *See also*

Cal. Penal Code § 1172.1(a). But for Laun, this type of further state-court action seems unavailable due to the 2021 grant of relief. Even when a judgment is vacated under state law, however, the records of the vacated conviction still exist. An individual's so-called rap sheet, for example, typically contains all arrests, and it is often time consuming to determine which if any convictions have effect. A federal writ, if granted, seems likely to be a defense to a future firearm charge, although it is doubtful that a federal writ would prevent a firearm charge from being filed. *See People v. Hurtado*, 47 Cal. App. 4th 805, 814 (1996) (regarding a defense for temporary possession).

Dated: March 29, 2023

Respectfully submitted,

ROB BONTA
Attorney General of California
DANIEL ROGERS
Supervising Deputy Attorney General


s/Matthew Mulford
MATTHEW MULFORD
Deputy Attorney General
*Attorneys for Respondent*

MM:AWM
SD2019800155
83885164.docx

<span>
</span>

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Respondent, certifies that this brief contains 2,359 words, which:

   _x_  complies with the word limit of L.R. 11-6.1.

   ___  complies with the word limit set by court order dated February 13, 2023.

Dated: March 29, 2023                    Respectfully submitted,

                                                                Rob Bonta
                                                                Attorney General of California

                                                                s/ Matthew Mulford
                                                                Matthew Mulford
                                                                Deputy Attorney General
                                                                *Attorneys for Respondent*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Respondent, certifies that this brief contains 2,359 words, which:

   _x_  complies with the word limit of L.R. 11-6.1.

   ___  complies with the word limit set by court order dated February 13, 2023.

Dated: March 29, 2023

Respectfully submitted,

Rob Bonta
Attorney General of California

s/ Matthew Mulford
Matthew Mulford
Deputy Attorney General
*Attorneys for Respondent*

# CERTIFICATE OF SERVICE

Case Name:   **Laun v. Orange County Sheriff**          No.   **8:18-cv-02226-JVS-KES**

I hereby certify that on <u>March 29, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**SUPPLEMENTAL BRIEF REGARDING MOOTNESS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>March 29, 2023</u>, at San Diego, California.

|  |  |
|---|---|
| Almeatra W. Morrison | *Almeatra W. Morrison* |
| Declarant | Signature |

SD2019800155
83885505.docx